**STATE of Missouri, Respondent,**

v.

**Jasper, Lee STEWART, Appellant.**

**No. KCD 27734.**

Missouri Court of Appeals, Kansas City District.

Oct. 6, 1975.

Motion for Rehearing and/or Transfer Denied Nov. 3, 1975.

Thomas M. Larson, Public Defender, Mark D. Johnson, Asst. Public Defender, Kansas City, for appellant.

John C. Danforth, Atty. Gen., Philip M. Koppe, Asst. Atty. Gen., Jefferson City, for respondent.

Before SWOFFORD, P. J., and WELBORN and HIGGINS, Special Judges.

ANDREW JACKSON HIGGINS, Special Judge.

Jasper Lee Stewart, under indictment for murder, first degree, was convicted by a jury of murder, second degree, and his punishment was assessed at 75 years' imprisonment. Sentence and judgment were rendered accordingly. §§ 559.010, 559.020, 559.030, RSMo 1069, V.A.M.S.

The defense was justifiable homicide while acting in self-defense. (§ 559.040, RSMo 1969, V.A.M.S.) Appellant does not question the sufficiency of evidence to sustain his conviction, and the jury reasonably could find that: On March 26, 1974, at approximately 7:30 p. m., at 11th and Forest Streets, Kansas City, Jackson County, Missouri, Jasper Lee Stewart intended to kill Emanuel L. Beeks when he fired four shots from a revolver at Emanuel L. Beeks; that one shot entered the victim's left upper arm one inch below shoulder level, and three entered the left side of his back, two of which exited in the anterior chest and one from the base of his neck; that Emanuel Beeks died as a result of such wounds.

Appellant charges the court erred (I) in refusing to allow defendant to question Mrs. Bertie Mae Scott whether the victim, Emanuel L. Beeks, had a reputation in the community "as an individual who carried a weapon."

Defendant testified in his own behalf that he encountered the victim in the doorway of a store at 11th and Forest; that he was about to step in the doorway when "Emanuel Beeks stepped out, and grabbed my hand, and spinned me around off the curb. * * * he punched me, see. * * He run his hand in his pocket. * * * I saw an object in his hand. I didn't know whether it was a gun or knife. It was a shiny piece of metal. * * * In his hand * * * Out of his pocket. * * * I shot him. * * * I heard several people say he was a very violent man, very violent tempered * * *." He was told so by his "sister for one. She used to stay in the apartment building. He used to create a lot of disturbance, and mess with people."

Defendant also called Bertie Mae Scott on the issue of the victim's reputation, and the following occurred:

"Q. Are you related in any way to the defendant in this matter, Jasper Stewart? A. No, I am not. Q. Do you know him well? A. I know him, but not too well.

"Q. Now, did you know Mr. Leonard Beeks? A. Oh, yes. Q. What were the circumstances and the length of your acquaintance of Mr. Beeks? A. I know Beeks through my sister. Q. Are you familiar with other persons in this community who knew Mr. Beeks? A. Oh, yes.

"Q. Do you know the reputation—did you know—do you know the reputation for Mr. Beeks being a man of violent character? A. Oh, yes, he was. Q. He did have a reputation? A. I am sure. Q. Do you know the reputation of Mr. Beeks for being a man who carried a weapon? A. Oh, yes.

"MR. HAGGERTY: Your Honor—

"THE COURT: Objection is sustained. The jury is instructed to disregard that question and any implication thereof."

Appellant argues that whether the victim had a reputation for being a man who carried a weapon was relevant and material on the issue of self-defense; and that such a statement from Mrs. Scott was of particular value because she was a "neutral" witness, denial of her answer was reversible error.

Mrs. Scott was qualified to testify on the issue of the victim's general reputation in that she was acquainted with him and the community in which he lived and moved, and knew his character. *State v. Antwine*, 506 S.W.2d 397, 399[2] (Mo.1974); *State v. Kain*, 330 S.W.2d 842 (Mo.1960); 97 C.J.S. Witnesses § 55, p. 443. In a homicide case where the defense is self-defense, evidence is competent to show that the deceased bore a reputation for being of violent and turbulent disposition or character. Such testimony is limited, however, to general reputation and does not encompass specific acts not connected with defendant. *State v. Maggitt*, 517 S.W.2d 105, 107[1] (Mo. banc 1974); *State v. Duncan*, 467 S.W.2d 866, 867[1, 2] (Mo.1971). Under these authorities, both Mrs. Scott and defendant were properly permitted to testify to their knowledge of the victim's reputation as a man of violent character, and her testimony on his reputation as a man who carried a weapon was properly excluded. The latter was not relevant on whether the victim had a reputation for violence and turbulence because a weapon may be lawfully and peaceably carried without a resultant reputation for a violent and turbulent character or disposition.

Appellant charges the court erred (II) in admitting into evidence State's Exhibits 19 and 20, color photographs showing the victim lying in the street in a trail and pool of blood, "for the reason that said exhibits were offered for no valid evidentiary purpose and inflamed the jury." He asserts that the facts revealed by the photographs were related by other witnesses, that the victim had otherwise been identified by Exhibit 8, and that they were taken "a substantial time" after the shooting, all to conclude that the exhibits did not relate to any issue tested at trial and served only to inflame the jury.

The general rules relating to admission of this type of evidence were recently summarized, *State v. Jackson*, 499 S.W.2d 467, 472[5–8] (Mo.1973): "The trial courts have a wide discretion in determining the admissibility of photographs. * * * It has generally been held that even though a photograph may be inflammatory it is admissible if it tends to prove any material element of the State's case; this includes the issues of identity, condition and location of the body, nature or location of wounds, and the cause of death; and, generally, if the photograph corroborates the oral testimony of the state or refutes defense testimony it is admissible." See also *State v. Moore*, 303 S.W.2d 60 (Mo. banc 1957); *State v. Clark*, 494 S.W.2d 26 (Mo. banc 1973); *State v. McDaniel*, 336 Mo. 656, 80 S.W.2d 185 (1935); *State v. Edwards*, 435 S.W.2d 1 (Mo.1968); *State v. Robinson*, 328 S.W.2d 667 (Mo.1959); 23 C.J.S. Criminal Law § 852(1), p. 342, et seq.

Under the foregoing rules, there was no error in the admission into evidence of Exhibits 19 and 20 in this case. They were relevant in corroboration and clarification of testimony given by State's witnesses; they identified the deceased and showed the location of his body with respect to where the shooting began, and the nature, location, and extent of the wounds. They were particularly material and relevant on the issue of self-defense in that they showed a closed pocketknife in the victim's left hand near his left pants pocket. *State v. Brewster*, 525 S.W.2d 427, 429–430[4] (Mo.App. 1975); *State v. Stevens*, 467 S.W.2d 10, 24 (Mo.1971); *State v. Crow*, 486 S.W.2d 248, 255 (Mo.1972); *State v. Parsons*, 513 S.W.2d 430, 439–440 (Mo.1974).

Judgment affirmed.

All concur.