**STATE of Missouri, Respondent,**

v.

**Kevin WILLIAMS, Appellant.**

**No. 54631.**

Missouri Court of Appeals,
Eastern District,
Division Three.

Feb. 21, 1989.

Application to Transfer Denied
April 18, 1989.

Henry B. Robertson, Asst. Public Defender, St. Louis, for appellant.

William L. Webster, Atty. Gen., Christopher M. Kehr, Asst. Atty. Gen., Jefferson City, for respondent.

DOWD, Presiding Judge.

Defendant appeals the judgment entered on a jury verdict convicting him of four counts of robbery first degree, § 569.020, RSMo 1986, and one count attempted robbery first degree, § 564.011, RSMo 1986. Defendant was sentenced as a persistent and Class X offender to four concurrent terms of thirty years imprisonment and one consecutive life term of imprisonment since the court found he pled guilty to or was convicted of at least seven felonies committed at different times and unrelated. We affirm his convictions.

The facts construed most favorably to the verdict are as follows: Four customers and a cook were in a diner shortly after 6:30 a.m. on Easter Sunday, April 19, 1987. Defendant, wearing a gray sweatshirt or sweater and bluejeans, entered but remained standing. He then produced a sawed-off shotgun and announced a hold-up. The cook put the money from the register and the contents of the backup drawer including fifteen rolls of quarters into a brown paper bag. Defendant also had ordered the surrender of wallets and jewelry. The cook surrendered her clutch purse, ring and necklace. Three of the customers surrendered their wallets and the fourth refused to give up his watch or wallet even though defendant pointed his gun at the customer's head and slapped him.

An off-duty policeman was stopped at the same intersection as the diner and observed the robbery in progress. On one street adjacent to the diner, a small gray car was parked with its passenger door open. Inside, the driver was eating a hamburger.

The officer, who was in uniform but driving his own car, drove through the diner's parking lot and over the curb in front of the car. Defendant came out carrying the gun and the bag and got into the gray car.

After following the gray car for a short period of time, the officer lost sight of it for one and a half or two minutes and when he spotted it, the driver was coming across the street and got in. The officer stopped the car a short time thereafter. The driver was codefendant Frederick Starks and the passenger was the defendant, Kevin Williams. The paper bag was found on the right floorboard under the dash with some money and a wallet visible inside. The gun was not found despite a search of the area.

■ Defendant's first point on appeal states that the trial court erred in admitting into evidence photographs of stolen property in the getaway car. Defendant argues that the pictures "did not assist the jury but were calculated to confuse and mislead them by creating a false impression that appellant was found in knowing possession of stolen property scattered openly about the floor and seat of the car instead of being contained in the paper bag where it was actually found."

While defendant is challenging the photographs as prejudicial, he has failed to include the photographs with the record on appeal. Thus, we are unable to determine their possible prejudicial effect or determine the propriety of their admission. It is defendant's duty to furnish all exhibits which admission is alleged to be error. Rule 81.12; *State v. Dodson,* 556 S.W.2d 938, 947 (Mo.App.1977).

The trial court has wide discretion in determining the admissibility of photographs, *State v. Stewart,* 529 S.W.2d 182, 184 (Mo.App.1975), and we will not presume the trial court erred in the admission of this exhibit, *Dodson* at 947.

■ Furthermore, the transcript reveals that through testimony the jury was well aware of the fact that items displayed in

the photograph were found inside the paper bag rather than scattered openly as the defendant states the photograph suggests. The following testimony was given on cross-examination of the police photographer:

Q. Okay. So, in other words, when you get to the scene, you said the door is already open. You know, this is the car you are supposed to be photographing. So, one of the first things you do is photograph things the way you saw them before anything is ever changed around?

A. That's true.

Q. And when you did that, the contents of that bag, the money and so forth or whatever else was in it, was inside the bag, is that right?

A. Yes, ma'am, it was.

Q. When then did Officer Marvin, I think you said, scatter the contents of that bag on the scene?

A. At some point after that when I indicated to him that I was going to seize the bag as evidence, and we then—he or I. I don't recall who removed the contents of the bag, and I packaged the bag and conveyed it to the Identification Division.

Clearly no prejudice could result from the introduction of these photographs into evidence. Point denied.

Defendant's second point on appeal states that the trial court erred in overruling his motion to quash the jury panel because defendant made or offered to make a prima facie case under *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). The trial court found that defendant failed in his attempt to make a prima facie case. We uphold this finding.

■ In order to establish a prima facie case under *Batson,* the defendant must show that (1) defendant is a member of a cognizable racial group, (2) that the prosecutor has exercised peremptory challenges to remove members of the defendant's race from the venire, and (3) that "these facts and any other relevant circumstances raise an inference that the prosecutor used that practice to exclude the veniremen from the petit jury on account of their race." *Batson* 476 U.S. at 96, 106 S.Ct. at 1723. The third element requires the trial court to consider the state's explanation of the manner in which it employed its challenges. *State v. Antwine*, 743 S.W.2d 51, 64 (Mo. banc 1987). After a *Batson* hearing, the trial court found that defendant failed to meet this burden. There were 53 persons in the venire panel of which 12 were black. Of the 14 state peremptory strikes, 4 were against black persons and only 3 of those were jurors and the other an alternate. These strikes, in effect, increased the percentage of black people on the jury from those on the venire panel.

■ Defendant's attorney challenged two peremptory strikes in particular, Mr. McRoberts and Ms. Oliver. During the *Batson* hearing, the state explained its reasons for striking Mr. McRoberts and Ms. Oliver giving race neutral explanations. The prosecutor stated that Mr. McRoberts fell asleep during voir dire, displayed an inability to pay attention and had developed a rapport with defense counsel in the way he answered defense counsel's questions. The prosecutor then stated that he observed Ms. Oliver state in response to a general question that she believed "police officers lie." While defendant challenged these explanations, he did not meet his burden of raising an inference that the state had stricken them based upon their race. Deference should be given to the trial court's opportunity to judge the demeanor and credibility of the witnesses. *Antwine* at 66. We find no abuse of discretion. Point denied.

Defendant's third point on appeal states that the trial court erred in denying his motion to quash the venire panel without an evidentiary hearing because such a hearing would have proven that this panel was not a fair cross-section of the community as required by the sixth and fourteenth amendments. Defendant argues that the practices of the jury commissioner are responsible for the disproportionate numbers of blacks in the venire panel compared to the percentages of blacks in the community.

In *Duren v. Missouri,* 439 U.S. 357, 99 S.Ct. 664, 58 L.Ed.2d 579 (1979), the United States Supreme Court set forth a three-part test which must be met in order to establish a constitutional violation of the requirement of a fair cross-section of community representation: 1) the group alleged to be excluded must be shown to be a distinctive group within the community; 2) the representation of this group in the venire panel is not fair and reasonable in relation to the number of such persons in the community; and 3) this under-representation is due to the systematic exclusion of the group in the jury selection process. *Id.* at 364, 99 S.Ct. at 668.

█ There is a strong presumption that the jury tendered at the outset of trial has been properly selected. *State v. Bynum,* 680 S.W.2d 156, 160 (Mo. banc 1984). The systematic exclusion of a distinctive group is not established by the under-representation or nonrepresentation of that group on a particular jury panel. *State v. Jordan,* 751 S.W.2d 68, 73 (Mo.App.1988).

Appellant argues that since he offered to prove the systematic exclusion resulting in the drastic under-representation of their race on the jury panel, he should have been afforded a hearing. The trial court, without comment, stated that "it has fully considered the motion ... to quash the panel based on racial composition" and then overruled the motion denying the request for an evidentiary hearing.

█ Defendant at the time of his motion was given the opportunity to prove his assertion of constitutional violation. Defendant only presented statistical evidence with respect to his own venire panel, and presented absolutely no statistical evidence regarding venire panels as a whole over time, in the City of St. Louis. Evidence as to a single venire panel does not satisfy the test requirements prescribed by *Duren.* *State v. Davis,* 646 S.W.2d 871, 874 (Mo. App.1982), *cert. denied,* 464 U.S. 962, 104 S.Ct. 398, 78 L.Ed.2d 340 (1983). Defendant's argument during the motion consisted only of bare, unsupported allegations of discriminatory effects with the use of voter registration lists, property ownership lists and telephone ownership lists as the basis for jury selection in St. Louis City.

The state argues that the motion and the request for an evidentiary hearing were merely dilatory tactics as he was wholly unprepared to prove his assertion at the time of the motion but instead requested an evidentiary hearing. While the transcript does not clarify that issue, we find no error in the trial court's denial of the motion to quash without an evidentiary hearing under the facts presented here. Point denied.

JUDGMENT IS AFFIRMED.

SIMON and CARL R. GAERTNER, JJ., concur.